# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JUDITH L. BENSON,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 3:12-CV-00035-RDP |
| **SOCIAL SECURITY ADMINISTRATION, COMMISSIONER MICHAEL J. ASTRUE,** | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Plaintiff Judith L. Benson ("Plaintiff" or "Benson") filed this action pursuant to Title II of Section 205(g) and Title VXI of Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. *See also*, 42 U.S.C. § 405(g), 1383(c)(3). Based upon the court's review of the record and the brief submitted by the Commissioner,[1] the court finds that the decision of the Commissioner is due to be affirmed.

**I.    Proceedings Below**

Plaintiff originally applied for disability insurance benefits and supplemental security income for a period of disability beginning May 17, 2005. (Tr. 56). Plaintiff amended that application to assert an onset date of November 15, 2005 due to part time work post-dating the alleged disability onset date. (Tr. 56). On May 17, 2007, the Administrative Law Judge ("ALJ") Randall Stout denied

---

[1] The court does not require briefs. Plaintiff elected not to file a brief in support of her appeal.

this claim for disability benefits for the period November 15, 2005 through May 17, 2007. (Tr. 177-90).

On September 13, 2007, Plaintiff filed another claim for disability insurance benefits and supplemental security income alleging a period of disability beginning May 18, 2007. (Tr. 194-97, 229-33). Plaintiff alleged that her disabling conditions were affective/mood disorders and disorders of the back. (Tr. 197). On January 15, 2008, this disability claim was also denied. (Tr. 103, 198-207).

On March 14, 2008, Plaintiff filed a request for a hearing before an ALJ on her 2007 disability claim. (Tr. 208-10). On September 2, 2009, ALJ Patrick Digby set a hearing for September 23, 2009. (Tr. 211-16). After the initial September 23, 2009 hearing, the ALJ determined that additional medical evidence and consultative examinations were needed and this information was thereafter received. (Tr. 301-13, 775-815). On July 22, 2010, a supplemental hearing was set for July 28, 2010. (Tr. 218-28). After the July 28, 2010 hearing, it was determined that further additional evidence, in particular a nerve conduction study, was needed to evaluate Plaintiff's back problems and her subjective complaints of pain. (Tr. 169-75, 815). On August 9, 2010, Plaintiff was referred by the Disability Determination Service to a neurologist for this testing. (Tr. 317). An appointment was scheduled for Plaintiff for August 19, 2010. (Tr. 317). Plaintiff failed to attend this appointment. (Tr. 321).

In his decision, dated September 8, 2010, the ALJ determined that Plaintiff had not been under a disability within the meaning of §§ 216(i), 223(d) and 1614(a)(3)(A) of the Act from May 18, 2007 through the September 8, 2010 date of his decision. (Tr. 9-47). After the Appeals Council

denied Plaintiff's request for review of the ALJ's decision, that decision became the Commissioner's final decision, and thereafter a proper subject of this court's review. (Tr. 1-3).

At the time of the 2009 hearing, Plaintiff was twenty-eight years old. (Tr. 107). She completed eighth grade in school and dropped out because she became pregnant. (Tr. 107). She later obtained her GED. (Tr. 107). She is able to read and write. (Tr. 252). She was later divorced, and, at the time of the hearing, had four children ages 13, 10, 4 and 3. (Tr. 106). Plaintiff last worked in a daycare in approximately 2005. (Tr. 107). After returning from maternity leave for her third child, Plaintiff injured her back and could no longer perform her duties such as lifting and changing the children. (Tr. 107-8).

On August 27, 2007, Plaintiff was admitted to Eliza Coffee Memorial Hospital after overdosing on prescribed Valium. (Tr. 642). She claimed that she took the pills because a voice in her head told her to do so. (Tr. 642-46). At this time, Plaintiff was diagnosed as suffering from opiate dependence, benzodiazepine dependence, cocaine abuse versus dependence, and mood disorder secondary to benzodiazepine dependence, opiate dependence and cocaine abuse. (Tr. 642). She was also diagnosed with borderline personality disorder. (Tr. 642). Upon her discharge, Plaintiff was advised to pursue individual therapy and treatment for substance abuse. (Tr. 643).

In November 2007, Plaintiff completed a daily activities questionnaire. (Tr. 264-71). Plaintiff reported that she was able to care for her own personal needs and required no assistance with those matters. (Tr. 264). She helped with cooking, laundry, dishes, changing diapers, fixing bottles and doing housework. (Tr. 264-66). However, she reported that she was nervous leaving the house and is afraid she will have a panic attack. (Tr. 264-66). She also has pain in her back. (Tr. 264-66).

On December 10, 2007, Plaintiff saw Bonnie L. Atkinson, Ph.D, L.L.C., for a comprehensive psychological evaluation. (Tr. 656-61). Dr. Atkinson reviewed Plaintiff's medical records and took them into consideration in providing her opinion. (Tr. 656). Dr. Atkinson recorded Plaintiff's history and activities of daily living including that Plaintiff had friends, her family was a source of support, she could perform housework, prepare simple meals, and care for herself without assistance. (Tr. 658, 660-61). Plaintiff reported to Dr. Atkinson that she left her last job at a daycare center due to physical injury, as opposed to mental problems, and that she had no problems getting along with supervisors or coworkers. (Tr. 658).

Dr. Atkinson reported that Plaintiff's appearance was normal, she had appropriate behavior, including eye contact, and she was friendly and cooperative. (Tr. 659, 660). Dr. Atkinson observed that Plaintiff was able to maintain focus, her thought and concentration were normal, and her reasoning was fair. (Tr. 659). Dr. Atkinson found Plaintiff's language comprehension to be good and her speech and stream of thought to be clear. (Tr. 659). Dr. Atkinson observed that Plaintiff's memory was normal except for her delayed recall, which was poor. (Tr. 659-60). Dr. Atkinson concluded based on her observations that Plaintiff was likely functioning in the "average range" and that she had sufficient judgment to make acceptable work decisions. (Tr. 660, 661). Dr. Atkinson assigned Plaintiff a Global Assessment of Functioning (GAF) score of 65, which indicates only mild symptoms. (Tr. 661). *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 32-34 (4th ed. 2000, Text Rev.).

On December 27, 2007, Plaintiff underwent a disability examination with Brad Ginevan, M.D., who evaluated Plaintiff's physical impairments. (Tr. 683-85). Dr. Ginevan noted that Plaintiff complained of back pain since 1999 from a work injury and that she experienced pain when

bending and when sitting for longer than ten minutes. (Tr. 683). Dr. Ginevan observed Plaintiff's gait to be normal and that she was able to heel toe walk. (Tr. 684). Dr. Ginevan observed Plaintiff had no back deformities or tenderness, but that she had bilateral back spasms. (Tr. 684). Nevertheless. Dr. Ginevan observed Plaintiff to have had full range of motion in her back except for her forward flexion, which was only slightly reduced. (Tr. 684). Plaintiff also had full muscle strength, grip strength, and normal reflexes. (Tr. 684).

At the 2009 hearing, Plaintiff testified that she was not working because she got nervous around people and had panic attacks. (Tr. 109). She testified that she felt like people stared at her and talked about her. (Tr. 109). She also reported hearing voices in her head, but was on medication for that. (Tr. 110). Plaintiff claimed she had memory loss and was depressed "all the time." (Tr. 252). She also suffers from migraines. (Tr. 252).

Plaintiff also complained that her back hurt "extremely bad." (Tr. 110). Plaintiff reported that she was unable to stand for more than 10 or 15 minutes at a time, could not bend over for long periods, and that it was difficult for her to change her baby's diaper. (Tr. 113, 252).

Certain medical records were unavailable at the 2009 hearing or until shortly before that hearing. (Tr. 138-42). Therefore, Plaintiff was given the opportunity to supplement the record following the 2009 hearing. (Tr. 138-42). The hearing before the ALJ was reconvened on July 28, 2010, at which time additional records and medical experts' opinions were available. (Tr. 146).

Jon G. Rogers, Ph.D. performed a psychological evaluation of Plaintiff on February 17, 2010. (Tr. 775-85). Plaintiff reported to Dr. Rogers that she abused marijuana, pills and cocaine. (Tr. 777). Dr. Rogers observed that Plaintiff's appearance was appropriate, her mood appeared anxious and depressed, and her stream of talk, speech, and mental activity appeared normal. (Tr. 777).

However, her judgment and insight were poor. (Tr. 778). Dr. Rogers administered an IQ test to Plaintiff on which she earned a full scale IQ score of 82, which placed her in the low average range intellectually. (Tr. 778).

Dr. Rogers noted her grip strength was roughly normal for a female her age, and her gait was normal. (Tr. 779).

Dr. Rogers concluded that Plaintiff was able to function independently, but the quality of her daily activities was below average. (Tr. 781). In reaching this conclusion, Dr. Rogers considered Plaintiff's relevant medical records. (Tr. 781). Dr. Rogers assigned Plaintiff a GAF score of 50. (Tr. 781). He reported that Plaintiff should be able perform most activities of daily living, manage her financial benefits, and that the extent of her mental impairment was moderate. (Tr. 782). Dr. Rogers concluded that Plaintiff's "past + current drug abuse along with side effects of her prescriptions could well have influenced her scores." (Tr. 784).

Medical expert Richard D. Hark, Ph.D. also reviewed Plaintiff's medical evidence as it related to her mental impairments and provided a report to the ALJ before the July 2010 hearing. (Tr. 791-803). Dr. Hark noted that Plaintiff had the following psychological conditions: Borderline Personality Disorder, Major Depressive Disorder, and Polysubstance Dependence/Abuse. (Tr. 791). Dr. Hark noted that no clinical test results confirmed these diagnoses, but that they came from various treating physicians. (Tr. 791). Dr. Hark further noted Plaintiff's inconsistent reporting regarding her drug use and that such drug use and abuse likely contributed to Plaintiff's mood lability and the evaluation of her cognitive abilities. (Tr. 792-93).

Although Plaintiff complained that her activities are limited by social anxiety and panic attacks, Dr. Hark noted that Plaintiff did not display any symptoms or signs of social avoidance when

interacting with mental health professionals. (Tr. 793). Rather, Plaintiff reported going to parties and interacted with certain mental health professionals in a flirtatious manner. (Tr. 793). Dr. Hark observed that Plaintiff's mental health examinations only showed moderate dysphoria and anxiety, and that her thoughts were always clear and never tangential, circumstantial or illogical. (Tr. 794). Dr. Hark concluded that, with *appropriate* use of prescription medications and faithful attendance at psychotherapy, Plaintiff was "very capable" of performing simple, routine, repetitive work activities and she could handle frequent contact with the public, coworkers, and supervisors. (Tr. 794).

Allan N. Levine, M.D., provided an expert opinion as to Plaintiff's physical impairments and limitations based on a review of Plaintiff's medical records. (Tr. 813-15). Dr. Levine observed that Plaintiff had two medically determinable impairments: (1) chronic back pain and bilateral leg pain secondary to diagnoses of lumbar degenerative disc disease, bulging discs, and (2) chronic knee pain secondary to bilateral chondromalacia patellae. (Tr. 813). Dr. Levine noted that MRIs of Plaintiff's lumbar spine showed only moderate protrusions. (Tr. 813). Dr. Levine also noted that Plaintiff's medical records indicated that her knee surgeries were successful. (Tr. 815).

Dr. Levine was the one to suggest that a nerve conduction study might be in order to further evaluate Plaintiff's complaints of back pain. (Tr. 814-15). However, Plaintiff failed to attend her appointment for that testing. (Tr. 321). Without such testing revealing additional problems, Dr. Levine opined that Plaintiff's residual functioning capacity ("RFC") would enable her to lift fifteen pounds occasionally and ten pounds frequently, she could sit six hours in an eight-hour day with customary breaks, and she could stand and/or walk four hours in an eight-hour day for thirty-minutes at a time. (Tr. 815). Dr. Levine opined Plaintiff would have some limitation climbing stairs,

crouching, stooping, climbing and kneeling, and that she should avoid work around heavy machinery, unprotected heights and extreme cold. (Tr. 815). He stated that Plaintiff should have unlimited use of the upper extremities for fine and gross manipulations. (Tr. 815).

Although the record contains complaints by Plaintiff of back pain and depression, it also contains evidence that Plaintiff was abusing prescribed narcotics as well as illegal drugs. (Tr. 628, 642, 650). One of Plaintiff's treating physicians, Dr. Tomlinson, refused to treat Plaintiff any longer because she "violated [his] trust in [her] for the proper usage of prescribed scheduled drugs." (Tr. 628). His letter informing her of his refusal to provide further treatment contained the following note dated 8/27/07: "pt was sharing/splitting pills with boyfriend overdosed BC she stated kids were getting on her nerves." (Tr. 628). Further, medical evidence in the record supports the conclusion that the use of these drugs could certainly be contributing to her cognitive and mood complaints. (*See* Tr. 792-93).

## II.   ALJ Decision

For a claimant to be determined disabled as defined under the Act, the claimant must have "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," and which "makes you unable to do your past relevant work . . . or any other substantial gainful work that exists in the national economy." 20 C.F.R. § 416.905(a). A physical or mental impairment is defined as an impairment that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908.

Social Security regulations provide a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 416.920(a). First, the ALJ must determine if the claimant is engaging in substantial gainful activity; if so, a finding of non-disability is made and the inquiry ends. 20 C.F.R. § 416.920(b). Substantial gainful activity is work involving significant physical or mental duties, and is done or intended for pay or profit. 20 C.F.R. §§ 416.972(a)-(b). If it is determined that the claimant is not engaged in substantial gainful activity, the evaluation proceeds.

In the second step, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that is severe. 20 C.F.R. § 416.920(c). Severe is defined under Social Security regulations as requiring that the individual have a medically determinable impairment, or combination of impairments, that is not merely a slight abnormality that would have no more than a minimal effect on an individual's ability to work; that is, it significantly limits an individual's ability to do basic work activities. *Id.*; *see also* 20 C.F.R. § 416.921; Social Security Ruling ("SSR") 85-28.[2] If the claimant does not suffer from a severe impairment or combination of impairments, then the inquiry ends.

Third, the ALJ considers the medical severity of the claimant's impairment or combination of impairments and compares them to the listing of impairments. 20 C.F.R. § 416.920(d). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing, the claimant may be declared disabled. *Id.* Otherwise, the inquiry proceeds.

Step four requires the ALJ to determine the claimant's RFC based on the claimant's relevant medical and other evidence of record, and then to assess whether the claimant can do past relevant

---

[2]*See* http://www.ssa.gov/OP_Home/rulings/di/01/SSR85-28-di-01.html.

work based on the RFC. 20 C.F.R. § 416.920(e).  All impairments, including non-severe impairments, are also considered in finding the RFC.  *Id.*; *see also* C.F.R. § 416.945; SSR 96-8p.[3]  If the claimant can do past relevant work, then a finding of not disabled is made. 20 C.F.R. § 416.920(f).  However, if the claimant cannot do past relevant work, then the Commissioner must evaluate, at step five, whether there is other work in the national economy that the claimant can perform based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(g).  If the claimant can do no other work, then he or she is disabled; if the claimant can do other work, the claimant will be found not disabled.  *Id.*

In the instant case, the ALJ conducted a thorough and careful review of the record evidence. (Tr. 9-47).  The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010.  (Tr. 11).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since May 18, 2007, the alleged onset date.  (Tr. 11).  The ALJ found Plaintiff had severe impairments of degenerative disk disease ("DDD") of the lumbar spine, status post bilateral knee arthroscopic chondroplasty procedures, depressive/mood disorder and polysubstance dependence/abuse.  (Tr. 11).  The ALJ determined that none of Plaintiff's impairments, alone or in combination, met or equaled a listed impairment.  (Tr. 13-15).

The ALJ found that Plaintiff had the RFC to perform light work with additional restrictions. (Tr. 15-45).  Specifically, the ALJ found that Plaintiff could: occasionally lift 15 pounds and frequently lift 10 pounds; sit six hours total during an eight-hour workday; stand and walk a combined total of four hours in an eight-hour workday, but no more than 30 minutes at a time; and occasionally climb stairs and crouch.  (Tr. 15).  The ALJ found Plaintiff could not climb ladders,

---

[3]*See* http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-08-di-01.html.

ropes or scaffolds, crawl, kneel, work with heavy vibratory machinery, at unprotected heights or in exposure to extreme cold. (Tr. 15). The ALJ found that Plaintiff had no limitations in using her upper extremities for fine or gross manipulations. (Tr. 15). The ALJ further found that Plaintiff could understand, remember and carry out simple instructions (but not complex instructions), make simple work related decisions, respond appropriately to usual work situations and changes in a routine work setting, and respond appropriately to occasional interaction with coworkers, supervisors and the general public. (Tr. 15). These findings were supported by the consultative examinations submitted prior to the July 2010 hearing. (Tr. 791-815).

The ALJ further found that Plaintiff could not perform her past relevant work. (Tr. 45). However, with the assistance of a vocational expert, the ALJ found that, taking into consideration Plaintiff's age, education, work experience, and RFC, other work existed in significant numbers that Plaintiff could perform, including work as an inspector, assembler, and packer. (Tr. 46-47, 159-64). Because the ALJ found Plaintiff could perform other work, he found Plaintiff not disabled. (Tr. 47).

Plaintiff "seeks judicial review by this Court and the entry of a judgment for such relief as may be proper." (Doc. # 1).

### III.    Plaintiff's Argument for Remand or Reversal

Plaintiff did not file a brief outlining his arguments for remand or reversal. As indicated in the briefing letter to counsel (Doc. #8), the court does not require briefs. The court has reviewed the ALJ's decision under the appropriate standard of review without drawing inferences or conclusions based upon Plaintiff's failure to file a brief supporting remand or reversal.

**IV.     Standard of Review**

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. §§ 405(g), 1383(c)(3); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). It is something "more than a mere scintilla." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d at 1529. The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Legal standards are reviewed *de novo*. *Moore*, 405 F.3d at 1211.

V.  **Discussion**

    A.  **Substantial Evidence Supports the ALJ's Finding that Plaintiff Did Not Have an Impairment That Meets or Equals a Listing**

In connection with her disability claim, Plaintiff asserted that her impairments met or equaled listed mental impairments in Sections 12.04, 12.06 and 12.08. (Tr. 297). Plaintiff did not specify a physical impairment listing she claimed she satisfied. (Tr. 297). The ALJ determined that Plaintiff did not meet or medically equal any of these listings. (Tr. 14).

There is no apparent dispute that Plaintiff satisfies Section A of these identified listings. The ALJ determined, however, that Plaintiff did not satisfy Section B. To satisfy Section B, Plaintiff must be found to satisfy two of the following: (1) Marked restriction of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence, or pace; or (4) Repeated episodes of decompensation, each of extended duration. (Tr. 14). 20 C.F.R. § 404, Subpart P, Appendix 1.

The ALJ properly considered the Section B criteria for these listings and determined that the record evidence did not support the conclusion that Plaintiff satisfied two of those factors. The evidence, including Plaintiff's Daily Activities Questionnaire, and the psychological evaluations of Drs. Atkinson and Rogers, revealed that Plaintiff had no (or only limited) restrictions on her activities of daily living (Tr. 14, 264-71, 656-61, 775-85); she had only mild difficulties in social functioning (Tr. 14, 264-71, 656-61, 775-85); she had only moderate difficulties in maintaining concentration, persistence, or pace (Tr. 14, 264-71, 656-61, 775-85); and she had experienced no episodes of decompensation (Tr. 14, 264-71, 656-61, 775-85). The ALJ's findings on these issues are supported by substantial evidence in the record. (Tr. 264-71, 656-61, 775-85, 791-83).

The ALJ also considered the Section C criteria even though the Section B criteria were not satisfied. (Tr. 14). The ALJ found that Plaintiff did not satisfy the Section C criteria because she did not require inpatient treatment or a highly supported living arrangement. (Tr. 14). The ALJ also noted that no treating or consultative examiner ad assessed her as having such a Section C limitation. (Tr. 14, 264-71, 656-61, 775-85). These conclusions are supported by substantial evidence in the record. (Tr. 264-71, 656-61, 775-85, 791-83).

    **B.**    **Substantial Evidence Supports the ALJ's Finding That Plaintiff Has The RFC For A Reduced Range of Light Work**

The ALJ found that Plaintiff had the RFC for a reduced range of light work. (Tr. 15). Specifically, the ALJ recognized that Plaintiff's complaints of disabling physical limitations were inconsistent with much of the medical evidence, including the success of her pain medication, the fact that she at times denied particular symptoms and her physical examinations that were at times mostly normal. (Tr. 35-38). The ALJ also noted Plaintiff's activities of daily living conflicted with her alleged physical limitations. (Tr. 35-38). To reach these conclusions, the ALJ undertook a thorough and detailed review of the record evidence, including the evaluation performed by Dr. Ginevan. (Tr. 15-45, 101-76, 264-68, 683-85, 775-815). These portions of the record are substantial evidence which support the ALJ's RFC finding.

The ALJ also arranged for additional testing to obtain objective medical evidence regarding Plaintiff's subjective complaints regarding her physical limitations, but Plaintiff failed to attend her appointment for such testing. (Tr. 321).

With regard to Plaintiff's mental limitations, the ALJ further found that Plaintiff could understand, remember and carry out simple instructions (but not complex instructions), make simple

14

work related decisions, respond appropriately to usual work situations and changes in a routine work setting, and respond appropriately to occasional interaction with coworkers, supervisors and the general public. (Tr. 15). These conclusions are supported by substantial medical evidence in the record. (Tr. 656-61, 775-811).

The ALJ also concluded that, based upon her RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 46). This conclusion is also supported by substantial evidence in the record, in particular the testimony of the vocational expert. (Tr. 159-63).

### C. The ALJ Properly Employed the Pain Standard in Assessing Plaintiff's RFC

In order to establish a disability based on testimony of pain and other symptoms, a claimant must satisfy two parts of a three-part test. That is, the claimant must show (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Wilson*, 284 F.3d at 1225; *see Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). In determining whether the pain standard is met, the credibility of the claimant's testimony must be considered. *Lamb v. Bowen*, 847 F.2d 698, 702 (11th Cir. 1988). If the ALJ discredits a claimant's subjective testimony, he must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Id.*, referencing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

It does not follow that because the Eleventh Circuit has a pain standard that the ALJ must always include mention of alleged pain in a claimant's RFC. The ALJ is required to apply the pain standard "when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote*, 67 F.3d at 1560. The Eleventh Circuit has consistently reiterated that an ALJ must articulate explicit and adequate reasons for discrediting subjective pain testimony. *See Hale*, 831 F.2d at 1011; *Foote*, 67 F.3d at 1561-62; *Wilson*, 284 F.3d at 1225; *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, application of the pain standard does not mean that a claimant's RFC must automatically include mention of pain, so long as the ALJ's findings articulate explicit and adequate reasons for discrediting subjective pain testimony. *See id.*

The court finds that the ALJ properly applied the *Holt* pain standard, and that his findings are supported by substantial evidence. Although Plaintiff's RFC does not mention pain specifically, the ALJ's findings and discussion indicate that the pain standard was indeed applied *and* that the ALJ addressed Plaintiff's allegations of pain. (Tr. 15, 35-38). The ALJ specifically referred to the three-part test, and cited to 20 C.F.R. § 416.929, "which contains the same language regarding the subjective pain testimony that [the Eleventh Circuit] interpreted when initially establishing its three-part pain standard." *Wilson*, 284 F.3d at 1226, citing to *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1214-15 (11th Cir. 1991). (Tr. 15). The ALJ further pointed out that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record." (Tr. 15).

After careful consideration of the evidence, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her

"statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the RFC assigned by the ALJ. (Tr. 17). The ALJ concluded that, although the records overall indicated that Plaintiff had "some pain and limitations as a result of her back impairment," the objective findings did not support the extent of her complaints of limitations due to pain. (Tr. 38). Moreover, the ALJ also found that the record contained "strong evidence [Plaintiff] has exaggerated her level of pain to obtain narcotics from several sources." (Tr. 38). Although the ALJ arranged an appointment for Plaintiff to have additional medical testing to determine whether objective medical evidence existed to confirm the severity of Plaintiff's alleged pain, she failed to attend the appointment. (Tr. 321).

The ALJ applied the law correctly on this issue, and his findings are supported by substantial evidence.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ___22nd___ day of March, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE